IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

JOSEPH SHANE ENDICOTT, )
)
    Plaintiff, )
)
vs. ) Case No. 15-CV-0660-ODS
)
BRAD DELAY, et al., )
)
    Defendants. )

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending is Defendants' motion for summary judgment. Doc. #94. For the following reasons, Defendants' motion is granted.

## I.     BACKGROUND
### A.     Procedural History

In August 2015, Plaintiff, proceeding pro se, filed this matter, alleging claims under 42 U.S.C. § 1983 against Sheriff Brad Delay; Deputy Sheriffs Doug Bounous, Mark Shinn, Justin Harper, Casey Dewitt, Chad Ayers, Donovan Blakely, and David Botts; and Lawrence County, Missouri Commissioners David Botts, Sam Goodman, and Joe Ruscha.[1] Doc. #1. Beginning in December 2015, Plaintiff was represented by counsel. Doc. #27. Counsel later sought and was granted leave to withdraw. Docs. #51, 64. In September 2016, the Court granted Plaintiff's motion to appoint counsel, and appointed Dorothy Savory to represent him. Doc. #79-80. After Savory filed her entry of appearance, the Court granted Plaintiff's request to extend the deadline to amend pleadings. Doc. #85. But Plaintiff never sought leave to amend his complaint.

On June 15, 2018, Defendants filed a motion for summary judgment. Doc. #93. Plaintiff's response was due by July 6, 2018. L.R. 7.0(c)(2). But he did not file a response to the motion.[2] The Court directed Plaintiff to show cause, by July 24, 2018, why summary

---

[1] Plaintiff's claims for violation of his due process rights as well as all claims against Prosecutor Don Trotter and Dr. Karren Dorey were previously dismissed. Docs. #5, 65.
[2] When Plaintiff failed to timely oppose Defendants' motion for summary judgment, all facts set forth by Defendants were deemed admitted for purposes of summary judgment. L.R.

judgment should not be entered in Defendants' favor. Doc. #95. On July 24, 2018, Plaintiff asked for additional time to respond to Defendants' motion. Doc. #96. He argued the extension was necessary because his counsel "received [his] responses to discovery after the deadline," he "has been transferred to four or more facilities since the Petition was filed," and his counsel had a brief due on July 31, 2018. *Id.* The Court granted Plaintiff's motion, giving him until August 31, 2018, to file his response. Doc. #97.

On August 31, 2018, Plaintiff filed a motion to stay. Doc. #98. Therein, he asked the Court to stay the matter "pending discovery as to the reasons…why [he] has been transferred to numerous facilities preventing his access to the courts and possible violations of his [F]irst [A]mendment rights." *Id.* In support of his motion, Plaintiff directed the Court to his "statement of points and authorities," but none were provided. *Id.*[3] Plaintiff did not explain why he had not filed a response to Defendants' motion.

On September 5, 2018, the Court denied Plaintiff's motion, and again directed him to file his response to Defendants' motion by October 1, 2018. Doc. #103. Plaintiff's counsel was ordered to "do whatever she deems necessary to respond" to the motion. *Id.* The Court stated no further extensions of time would be granted, and warned Plaintiff if he "fail[ed] to file his response to Defendants' motion by October 1, 2018, the Court will deem Defendants' motion ripe, and will issue a ruling in due course." *Id.*

Instead of complying with the Court's Order and responding to Defendants' motion on October 1, 2018, Plaintiff filed two motions, neither of which explained why he had not filed a response. Docs. #105, 107. Plaintiff asked the Court (once again) to stay the matter pending substitution of one of the individual Defendants. Doc. #105. (A Suggestion of Death as to Defendant Blakely had been filed on September 10, 2018. Doc. #104.) Plaintiff argued discovery was necessary, and a motion to substitute party would need to be filed. Doc. #106. Plaintiff also asked the Court to modify its scheduling order,

---

56.1(b)(1). By failing to "properly address another party's assertion of fact as required by Rule 56(c), the court may…grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). When Plaintiff initially failed to respond, the Court could have considered Defendants' motion ripe for consideration.

[3] Although discovery closed in May 2018 (Doc. #92) and he did not obtain leave to reopen discovery, Plaintiff served interrogatories, requests for admissions, and requests for documents on Defendants on September 4, 2018. Docs. #99-101.

ostensibly to conduct the discovery referenced in his other motion. Doc. #107-08. Defendants opposed both motions. Doc. #109.

On October 5, 2018, the Court denied Plaintiff's motions. Doc. #110. The Court stated the substitution of Blakely, who was sued in his individual capacity only, would not affect Plaintiff's ability to respond to the pending summary judgment motion. *Id.* Also, discovery as to Blakely's substitute would be unnecessary because, in all likelihood, the Court would be substituting his estate. *Id.* The Court found "Plaintiff's request for additional discovery is yet another in a long line of requests, the effect of which is to delay the case," and he "provided no justification for further extending the life of an already prolonged case." *Id.* Defendants' summary judgment motion has been pending for more than four months. Plaintiff has yet to file a response.

## B. Plaintiff's Allegations

Before delving into the facts and legal arguments, it is beneficial – particularly in light of the Complaint being filed when Plaintiff was pro se – to summarize Plaintiff's claims. He contends Defendants violated his constitutional rights in the following ways:

(1) Plaintiff alleges "black mold" in the Jail made him and others sick. Doc. #1, at 8-9. He claims he "suffered from actual injury from…the black mold." *Id.* at 30. After Defendants Shinn and Carter attempted to fix the mold issue by using mold remover, officers (including Carter) and inmates became sick. *Id.* at 8-9. Plaintiff contends "6 inmates" asked Defendant Blakely to do a "medical protocall [sic]," but Blakely waited "several hours" to do the protocols. *Id.*

(2) Plaintiff avers the Jail does not have fire sprinklers, subjecting him to an "unreasonable threat of injury or death." *Id.* at 10, 21. He also contends the ventilation system is clogged and contaminated with "black mold," there are only two exhaust fans in the Jail, and the cells do not have return vents. *Id.*

(3) Plaintiff maintains the Jail's food preparation and service presents "an immediate danger to the health and well-being" of inmates. *Id.* at 10-11. Defendants do not wear hairnets, they check inmates' blood sugar and give insulin shots while serving meals, and do not change gloves after doing so. *Id.* Also, the cart that transports food is dirty and lacks a heating element. *Id.* Plaintiff does not know "if any injuries have occurred from this yet," and admits there are "no facts of physical injury." *Id.*

(4) Plaintiff alleges the Jail does not issue personal hygiene products, and the Jail does not have a commissary from which to buy these items. *Id.* at 11. Plaintiff also asserts the Jail's "female pod" has a shower, television, and telephone available "24/7," but the male inmates have limited access to showers, television, and telephone. *Id.*

3

(5) Plaintiff contends the Jail does not have emergency call buttons in the cells, and inmates cannot alert staff to an emergency. *Id.* at 12. He points to an incident where his blood pressure was 193/157, and he had to "holler" for help. *Id.*

(6) Plaintiff claims his placement in a "maximum security segregation cell" in July 2015 was "retaliatory." *Id.* at 12-15. He has not received a hearing on the incident that led to his segregation (i.e., alleged threatening remarks), and the failure to provide a hearing violates the Jail's policy. *Id.* He avers Defendants continue to retaliate against him in order to frustrate his ability to bring this lawsuit. *Id.* at 17, 30.

(7) Plaintiff alleges Defendants denied his requests for documents, they did not provide legal assistance, and the Jail's law library was inadequate. *Id.* at 16-17.

### C. Uncontroverted Facts[4]

During the relevant time, Plaintiff was a pretrial detainee at the Jail. Defendant Delay was the Sheriff of Lawrence County. Doc. #16, ¶ 2. Defendants Bounous, Shinn, Harper, DeWitt, Ayers, and Blakely were employed by the Lawrence County Sheriff's Office. *Id.* Defendants Botts, Goodman, and Ruscha were Commissioners of Lawrence County. *Id.* All Defendants are sued in their individual capacities. Delay, Bounous, Botts, Goodman, and Ruscha are also sued in their official capacities.

The Jail has a written grievance procedure in its Inmate Handbook. Doc. #94-1, at 2-3; Doc. #94-2, at 20-21. For the initial step, an inmate must attempt to resolve his grievance on an informal basis with the Corrections Officer. Doc. #94, at 2; Doc. #94-2, at 20. If a resolution is not reached, the inmate may file a formal written grievance, which is sent to the Jail Administrator. *Id.* The Jail Administrator evaluates the grievance and determines the disposition of the grievance. *Id.* If dissatisfied with the Jail Administrator's decision, the inmate may "appeal in writing, on a second grievance form, writing in bold letters on the top of the form 'APPEAL.'" Doc. #94-1, at 2; Doc. #94-2, at 21. The inmate must submit the appeal within three days of receiving the initial decision, and the appeal must be submitted in the same manner as the original grievance. *Id.* "The Jail Administrator and the Lawrence County Sheriff will review the appeal simultaneously. The joint decision of the Jail Administrator and the Sheriff is **FINAL**." Doc. #94-1, at 3; Doc. #94-2, at 21 (emphasis in original).

---

[4] The facts set forth by Defendants that are supported by admissible evidence are deemed uncontroverted for purposes of summary judgment because Plaintiff did not controvert the facts. Fed. R. Civ. P. 56(e)(2); L.R. 56.1(b).

Although he frequently utilized the Jail's grievance procedure, Plaintiff did not file a written grievance regarding the Jail's lack of fire sprinklers, lack of emergency call or intercoms, the ventilation system being clogged, the lack of return vents in cells, the limited number of exhaust fans, "black mold," and the lack of hygiene products being issued or available for purchase. Doc. #94-1, at 3. Although he filed a written grievance about six inmates asking for and not receiving medical attention for several hours, Plaintiff did not appeal that grievance. *Id.* Plaintiff failed to follow proper procedure to appeal his grievance about not being able to obtain copies of policies and procedures. *Id.* While incarcerated at the Jail, Plaintiff did not seek medical treatment for any medical condition or injury resulting from his complaints about the preparation, transportation, and/or temperature of food. Doc. #94-1, at 1.

Defendants seek summary judgment on all of Plaintiff's remaining claims. As explained above, Plaintiff never filed a response to the motion, and the time for doing so has passed. The motion is now ripe for consideration.

## II.     STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). The Court must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984). "[A] nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (citations omitted). Inadmissible evidence may not be used to support or defeat a motion for summary judgment. *Brooks v.*

5

*Tri-Sys., Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) (citation omitted).

### III. DISCUSSION
#### A. Failure to Exhaust Administrative Remedies

Defendants argue they are entitled to summary judgment on several of Plaintiff's claims because he failed to exhaust his administrative remedies. To address the numerous complaints prisoners were filing in federal courts, Congress enacted the Prison Litigation Reform Act ("PLRA"). *Jones v. Bock*, 549 U.S. 199, 202 (2007). "[T]he PLRA mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures before filing suit." *Id.;* 42 U.S.C. § 1997e(a). A section 1983 claim is exhausted for purposes of the PLRA "when an inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (citation omitted).

To exhaust his claims, Plaintiff had to initiate and complete the Jail's grievance procedure. This three-step procedure included (1) attempting to informally resolve a grievance with the corrections officer; (2) if unresolved, filing a formal written grievance; and (3) if dissatisfied with the Jail Administrator's decision on the formal written grievance, appealing in writing to the Jail Administrator and Lawrence County Sheriff, who issue a joint, final decision. Doc. #94-1, at 2-3; Doc. #94-2, at 20-21.

Plaintiff has not presented evidence he filed written grievances regarding, at a minimum, the lack of fire sprinklers, lack of emergency call buttons, the clogged ventilation system, the lack of return vents in cells, the limited number of exhaust fans, "black mold," and hygiene products not being issued or available for purchase. Doc. #94-1, at 3. In addition, it is undisputed that, although he filed a grievance about inmates asking for but not receiving medical attention for several hours, Plaintiff did not appeal that grievance. *Id.* Finally, it is uncontroverted that Plaintiff failed to follow the proper procedure to appeal his grievance about not being able to obtain copies of policies and procedures. *Id.*

By failing to initiate, follow, and complete the grievance process, Plaintiff did not exhaust his administrative remedies with regard to these grievances. Accordingly, Plaintiff's claims arising from these grievances have not been administratively exhausted, and he is barred from bringing claims based upon the grievances that were not exhausted. The Court grants summary judgment in favor of Defendants with regard to Plaintiff's claims

related to his complaints about fire sprinklers, emergency call buttons, the ventilation system, the lack of return vents in cells, the limited number exhaust fans, "black mold," hygiene products not being issued or available for purchase, inmates asking for but not immediately receiving medical attention, and not obtaining requested copies of policies and procedures.[5]

B. Conditions of Confinement

Plaintiff contends the conditions of his confinement at the Jail violated his constitutional rights. "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (citations and internal quotations omitted). The Eighth Amendment imposes duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care," and "take reasonable measures to guarantee the safety of the inmates." *Id.* at 832-33 (citations and internal quotations omitted). To prevail on an Eighth Amendment claim, Plaintiff "must prove both an objective element, which asks whether the deprivation was sufficiently serious, and a subjective element, which asks whether the defendant officials acted with a sufficiently culpable state of mind." *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993) (citation omitted). For prison condition claims, "the state of mind giving rise to liability is deliberate indifference." *Id.* at 1373-74 (citation omitted).

Plaintiff alleges "black mold" was in the Jail, he lacked access to the courts,[6] he was denied medical care, he received cold food, and the food was prepared or presented in an

---

[5] Plaintiff did not raise (and thereby waived) any argument that the grievance procedure was incapable of use. Even if he had raised the argument, Defendants would still be entitled to summary judgment. An administrative remedy is not capable of use when (1) the procedure operates as a dead end, (2) no ordinary prisoner could navigate the procedure, and (3) prison officials thwart inmates from taking advantage of the procedure. *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016). Plaintiff's persistent use of the grievance procedure, including the fact he appealed grievances, indicates the procedure was capable of use. Doc. #1-1. For this additional reason, Defendants' motion for summary judgment is granted with regard to claims Plaintiff did not administratively exhaust.
[6] In addition to failing to establish a prima facie claim based upon lack of access to courts, Plaintiff also set forth no evidence that he suffered an actual injury. This is fatal to his claim. An inmate alleging he did not have access to courts must "demonstrate the alleged

7

unsanitary manner.  With regard to each alleged condition, Plaintiff failed to present <u>any</u> evidence establishing the conditions existed as he alleges.  For this reason alone, his prison condition claims fail.  Moreover, Plaintiff did not set forth evidence establishing these conditions were "sufficiently serious," and he failed to show Defendants acted with deliberate indifference.  Consequently, Plaintiff cannot prevail on these Eighth Amendment claims.  The Court grants summary judgment in favor of Defendants on all of Plaintiff's claims arising from his alleged conditions of confinement.

## C. <u>Retaliation</u>

Plaintiff contends Defendants retaliated against him by placing him in a "maximum security segregation cell."  To establish a section 1983 retaliation claim, Plaintiff must show "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity."  *Spencer v. Jackson County, Mo.*, 738 F.3d 907, 911 (8th Cir. 2013) (citation omitted); *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (citations omitted).  Plaintiff "has a heavy evidentiary burden to establish a prima facie case."  *Id.* (citation omitted).  "Merely alleging that an act was retaliatory is insufficient."  *Meuir*, 487 F.3d at 1119 (citation omitted).  Defendants do not dispute Plaintiff engaged in protected activity.  Doc. #94, at 16.

Plaintiff, however, has not presented evidence that his placement in what was actually a holding cell for an unknown period of time constituted an adverse action that would chill an ordinary person from continuing to engage in protected activity.  The "ordinary-firmness" test is an objective test, and asks what "a prisoner of ordinary firmness would have done" in reaction to the adverse action.  *Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013).  There is no evidence establishing "a prisoner of ordinary firmness" placed in a holding cell would have chilled the prisoner from engaging in a protected activity.  Rather, the evidence establishes Plaintiff's placement in a holding cell did not chill his

---

shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Because he failed to demonstrate an actual injury from his alleged inaccessibility to the courts, Plaintiff failed to prove he has standing to bring this claim.  For this additional reason, Defendants' motion for summary judgment on this particular claim is granted.

speech. He continued to file several written grievances and engage in the grievance process. *See* Doc. #1-1, at 3-4, 6, 11-24. Because Plaintiff failed to establish the second element of his claim, the Court grants Defendants' motion for summary judgment on Plaintiff's retaliation claim.

Even if Plaintiff could establish an objective prisoner's protected activity was chilled by being placed in a holding cell, there is no evidence establishing Defendants were motivated by Plaintiff's protected activity when they placed Plaintiff in a holding cell. For this additional reason, the Court grants Defendants' motion for summary judgment on Plaintiff's retaliation claim.

### D. Qualified Immunity

In addition to the grounds discussed *supra*, Defendants move for summary judgment on Plaintiff's claims that are brought against them individually because Defendants are shielded by qualified immunity. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and internal quotations omitted). The doctrine balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*.

To defeat Defendants' motion for summary judgment based on qualified immunity, Plaintiff "must put forth facts showing that the officer's conduct violated a constitutional right, *and* that the right was clearly established at the time of the alleged misconduct." *Johnson v. Moody*, 903 F.3d 766, 773 (8th Cir. 2018) (citations omitted). As set forth *supra*, section III(B)-(C), Plaintiff has failed to set forth any evidence showing Defendants' conduct violated a constitutional or statutory right. And he has not established his constitutional or statutory right (assuming there was one) was clearly established at the time of Defendants' alleged misconduct. Because he failed to establish both prongs of the qualified immunity analysis, Plaintiff cannot defeat summary judgment on the grounds of qualified immunity. For this additional reason, Defendants' motion for summary judgment is granted with regard to Plaintiff's claims against Defendants individually.

### E. Official Capacity

Plaintiff also filed suit against Delay, Bounous, Botts, Goodman, and Ruscha in their official capacities. To establish an official capacity suit under section 1983, Plaintiff "must show…the official named in the suit took an action pursuant to an unconstitutional governmental policy or custom," or the official "possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner." *Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986)).

In his Complaint, Plaintiff did not identify a specific governmental policy or custom that was unconstitutional. And, as best the Court can discern, Plaintiff did not allege any of these officials possessed final authority over any subject matter at issue in this case, <u>and</u> used that authority in an unconstitutional manner. Consequently, Plaintiff's Complaint fails to state an official capacity claim upon which relief may be granted. Accordingly, the Court dismisses Plaintiff's official capacity claims.

Even if the Court were to find Plaintiff properly alleged official capacity claims, Defendants would still be entitled to summary judgment on these claims. Plaintiff has not established a specific governmental policy or custom was unconstitutional. In addition, Plaintiff has not shown any of these Defendants possessed final authority over any subject matter at issue in this case, and used that authority in an unconstitutional manner. Because Plaintiff has failed to establish a basis for an official capacity claim, the Court grants Defendants' motion for summary judgment on these claims.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment on all of Plaintiff's remaining claims is granted.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: October 19, 2018      UNITED STATES DISTRICT COURT